ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Corporation
Justin R. Shinnefield, State Bar No. 199036
jshinnefield@aalrr.com
Marlon C. Wadlington, State Bar No. 192138
mwadlington@aalrr.com
Jabari A. Willis, State Bar No. 235437
jwillis@aalrr.com
12800 Center Court Drive, Suite 300
Cerritos, California 90703-8597
Telephone: (562) 653-3200 • (714) 826-5480
Facsimile: (562) 653-3333

Attorneys for GARDEN GROVE
UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.B. a minor, by and through his Guardian Ad Litem, ALEXIS BAQUERIZO,<br><br>Plaintiff,<br><br>vs.<br><br>GARDEN GROVE UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | CASE NO.:  SACV08-01047 RSWL (CWx)<br><br>**DEFENDANT GARDEN GROVE UNIFIED SCHOOL DISTRICT'S PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL REVERSAL OF ADMINISTRATIVE DECISION**<br><br>**DATE:  July 22, 2009**<br>**DEPT:  21** |

Defendant GARDEN GROVE UNIFIED SCHOOL DISTRICT'S Proposed Findings of Fact and Conclusions of Law.

**I.**

**FINDINGS OF FACT**

1.     Dr. Reicks admitted that he never held a position as a school psychologist.  (V.1; 26:5-20)

2. Dr. Reicks testified that he was head of the psychology department under the health department at Anaheim High and Carlos was referred to him by the State Medical and he began seeing him as a therapist in 2005. (V.1; 26:5-20)

3. Dr. Reicks admitted that he thought Student was receiving services from Speech & Language Center not the Reading and Language Center (Vol.1; 41:19-41:24)

4. Dr. Reicks admitted that he never observed Student in District program and does not have speech and language credential. (Vol.1; 50:4-50:23)

5. Dr. Reicks admitted that does not believe there is such a thing as an speech and language credential. (Vol.1; 52:21-53:1)

6. Dr. Reicks admitted that he is not a licensed Occupational Therapist. (Vol.1; 53:7-53:9)

7. Dr. Reicks admitted he did not talk to anyone at District. (Vol.1; 57-59)

8. Dr. Reicks testified that his only knowledge of Student's education program was that he was in mild to moderate special day class for mental retardation (Vol.1; 65:2-65:8)

9. Dr. Reicks testified that the Reading and Language Center does not teach all subjects for elementary and middle school (Vol.1; 66:15-66:17)

10. Dr. Reicks testified that his understanding of the District's obligation to special education students is to provide the "best education" in the least restrictive environment. (Vol.1; 67:4-67:8)

11. John Chelini testified that he was Student's 5th grade teacher at Cook Elementary (Vol.1; 75:14-75:22)

12. John Chelini testified that Guardian took Student out of his class early over fifty times during 06-07 school year (Vol.1; 107:9-109:1)

13. John Chelini testified that Student was receiving educational benefits from his placement. Exhibit 93 showed awards he received (Vol.1; 159:10-159:22)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005656.00038/1262142v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

14.    Diane Peterson testified that she has been RSP teacher for 8 years with the district and prior to that she was instructional aide for 8 years (Vol.1; 168:1-168:12)

15.    Diane Peterson testified she was Student' RSP teacher in 4th and 5th grade. (Vol.1; 169:2-169:7)

16.    ALJ noted that he didn't see where it had been established that the District's IEP team had made a finding that SDC was the only program that would be offered at any pre-IEP team meeting. (Vol.1; 198:24-199:12)

17.    Diane Peterson testified that the independent evaluator, Barbara Pliha, was involved in 4/9/07 IEP Team Meeting. (Vol.1; 201:17-201:23)

18.    Diane Peterson testified that she believed that the February 8, 2006 IEP was appropriate and guardian consented to the February 8, 2006 IEP by letter dated February 24, 2006. (Vol.1; 211:10-212:24)

19.    Diane Peterson testified that as of February 5, 2007, Student was meeting all prior goals which were reviewed at the February 5, 2007 IEP meeting. (Vol.1; 213:13-213:19)

20.    Diane Peterson testified that Student's Guardian began pulling the Student out of class in 06-07 year which inhibited her ability to provide RSP services.  (Vol.1; 220:8-220:19)

21.    Diane Peterson testified that the IEP team members reviewed the RLC evaluations. (Vol.1; 222:7-222:25)

22.    Diane Peterson testified that Student's success from 2006 to 2007 was not without major prompting and his needs as they pertained to prompting could be better met in an SDC class. (Vol.1; 225:1-225:11)

23.    Diane Peterson testified that the SDC setting is more flexible, smaller group and slower pace, more time to respond. (Vol.1; 230:20-232:3)

24.    Barbara Pliha admitted that she was one of the co-founders of Reading and Language Center (was an owner until February 5, 2007); now she is an

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    employee, Director. (Volume II, 14:21-15:15)

2         25.    Barbara Pliha admitted Student needs social skills. (V.II, 25-14-16)

3         26.    Barbara Pliha admitted attending three IEP meetings, two that occurred

4    and one that started but ended up cancelled (V.II, 26:5-9)

5         27.    Barbara Pliha admitted that she also recommended Student have a

6    social group but couldn't recommend frequency.  She further admitted that she was

7    not an expert in the area. (V.II, 61:14-21)

8         28.    Barbara Pliha admitted that 6 or 7 different people provided services to

9    Student.  (V.II, 66:10-19)

10        29.    Barbara Pliha admitted that she only provided Student services 2 to3

11   times a week for 1 hour. (V.II, 66:24-67:13)

12        30.    Barbara Pliha admitted that she doesn't have a credential to diagnose

13   his "anxiety." (V.II, 67:14-21)

14        31.    Barbara Pliha admitted that RLC doesn't have a behaviorist or

15   psychologist on staff. (V.II, 67:22 - 68:2)

16        32.    Barbara Pliha admitted that that RLC is not certified comprehensively

17   to provide all services to a student (V.II, 70:4-11)

18        33.    Barbara Pliha admitted that RLC has not provided Student with

19   science, physical science, social studies or PE (V.II, 70:12-17)

20        34.    Barbara Pliha admitted that Student is receiving services at least 4

21   hours with up to 5 different clinicians/individuals working with him per day. (V.II,

22   70:23 - 71:10)

23        35.    Barbara Pliha admitted that Student's social skills program only lasted

24   3-4 months (1x per week, 1 hr per session) for a total of 12-16 sessions. (V.II, 72:8

25   - 73:8)

26        36.    Barbara Pliha admitted that 1:1 service is very restrictive environment

27   (V.II, 74:13-19)

28        37.    Barbara Pliha admitted that she had previously testified during a due

005656.00038/1262142v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   process hearing three times and all three times were on behalf of a parent. (V.II,
2   75:19 - 22)

3       38.   Barbara Pliha admitted that state certification only allows RLC to serve
4   10 students (V.II, 77:1-14)

5       39.   Barbara Pliha admitted that RLC is only certified to provide language-
6   based service.  She further admits that math services, word problems, etc. are not
7   included under language-based certification. (V.II, 78:1-5)

8       40.   Barbara Pliha testified that she believed that it is not necessary to
9   observe proposed programs for a student as part of assessment (V.II, 82:3-12)

10      41.   Barbara Pliha admitted that she had  previously testified that best
11  practice is to observe proposed program when offering opinion on program. (V.II,
12  83:12 - 15)

13      42.   Barbara Pliha admitted that she did not observe District proposed
14  program for 2007 ESY or 2007-08 school year. (V.II, 83:16-22)

15      43.   Barbara Pliha admitted that District's obligation for ESY is to maintain
16  current skills (V.II, 84:1-18)

17      44.   Barbara Pliha admitted that she is not qualified to make
18  recommendations about OT, APE, behavior intervention services, counseling and
19  guidance or audiological services.  (V.II, 84:21-85:16)

20      45.   Barbara Pliha admitted that best practice in terms of determining
21  appropriateness of particular classroom placement would include knowing the
22  student/teacher ratio and student ratio (V.II, 86:4-12)

23      46.   Barbara Pliha admitted that neither she nor her colleague contacted the
24  District regarding Student's educational needs before assessing him.  (87:20 - 88:4)

25      47.   Barbara Pliha admitted that there is no structured time with peers or
26  scheduled time with peers for Student. She also admitted that RLC did not facilitate
27  social interaction for Student during break times. (V.II, 107:8 - 108:13)

28      48.   Kristin Sugiyama testified that she has participated in evaluations of

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    Student including the initial evaluation and an evaluation in reading comprehension

2    in February 2008. (V.II,116:25 – 117:13)

3        49.    Kristin Sugiyama admitted that she does not have a teaching credential.

4    (V.II, 118:1-4)

5        50.    Kristin Sugiyama admitted that she did not hold a California credential

6    as either a speech/language therapist or psychologist. (V.II, 123:7-13)

7        51.    Kristin Sugiyama admitted that she, not Barbara Pliha, actually

8    administered the test, and Ms. Pliha oversaw her. (V.II,123:18-124:11)

9        52.    Kristin Sugiyama admitted that RLC is an NPA providing both

10   speech/language and limited academic instruction (V.II, 125:25-126:11)

11       53.    Kristin Sugiyama admitted that Student was not receiving his

12   instruction with any other students at RLC. (V.II,128:23-129:6)

13       54.    Kristin Sugiyama admitted that she was not sure if District was

14   provided with RLC's initial evaluation (Exhibit 74) (V.II, 130:4-16).

15       55.    Kristin Sugiyama admitted that she doesn't hold any credentials

16   allowing her to interpret the assessment results (V.II,132:3-5)

17       56.    Kristin Sugiyama admitted that she prepared a majority of the "write-

18   up" in the assessment results. (V.II,133:22-134:6)

19       57.    Kristin Sugiyama admitted that write-up is an interpretation of

20   assessment results and that she testified previously that she held no credential that

21   allowed her to interpret assessment results. (V.II, 134:13-18)

22       58.    Marianne Merito testified that she is speech pathologist and she has

23   provided speech services to Student from when he entered the District in second

24   grade until he left in June 2007. (V.II, 137:24-138:7)

25       59.    Marianne Merito testified that she attended an annual review meeting

26   for Student.  She further admitted that she attended a meeting prior to the IEP

27   meeting where it was discussed that SDC would be an appropriate placement based

28   on each specialist expressing their concerns and feeling it would be appropriate

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   placement. (V.II, 139:4-140:5)

2        60.    Marianne Merito testified that it was not a team agreement on the SDC

3   placement because it wasn't an IEP meeting. (V.II, 140:7-15)

4        61.    Marianne Merito testified that she drafted goals before IEP meetings

5   based on her work with a student (V.II, 141:12-14)

6        62.    Marianne Merito testified that she was present at a meeting where the

7   placement offer for 2007-2008 school year for mild/moderate SDC was discussed.

8   (V.II, 150:7-16)

9        63.    Marianne Merito testified that she has a restricted speech and hearing

10  credential, general credential (grades K-9).  She further testified that she holds a

11  state license in speech pathology and a CCC (clinical competence). She has been a

12  speech pathologist since 1974. (V.II,157:18 – 158:23)

13       64.    Marianne Merito admitted that her job duties and responsibilities

14  include performing assessments, attending IEP meetings, recommending services

15  and providing services (V.II, 158:24-159:8)

16       65.    Marianne Merito testified that in a given year, she assesses at least 200

17  students in the area of speech and language. (V.II, 160:19-161:1)

18       66.    Marianne Merito testified that she has assessed Student for his triennial

19  assessment in 2005 and has assessed him ongoing once a year to check progress.

20  (V.II, 161:11-19)

21       67.    Marianne Merito admitted that at the time of the triennial assessment,

22  was her impression that his articulation, voice and fluency were age-appropriate.

23  She further testified that he was having difficulty in the areas of receptive,

24  expressive and pragmatic language. (Exhibit 65 – Triennial Speech evaluation)

25  (V.II,162:4-163:7)

26       68.    Marianne Merito testified that she works on pragmatic language by

27  working on give and take communication, conversation, body language, eye contact

28  and question answering and asking. (V.II, 163: 16-22)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

69.     Marianne Merito testified that the speech and language services recommended for Student at that time were 45 minutes a week, pullout individual and 45 minutes a week, in class.  She further testified that at the time, she had been working with Student, had assessed him, and felt the services recommended were appropriate.  (V.II,164:25-165:13)

70.     Marianne Merito testified that she had previously provided the goals to the Guardian and was going to provide the goals to the Guardian a second time. (V.II,171:23-172:22)

71.     Marianne Merito testified that in her professional opinion, the speech/language services for the 2007 ESY provided an appropriate level of service for Student for the 2007 ESY.  (V.II,173:23-174:3)

72.     Marianne Merito admitted that she recommended a reduction in service based on him meeting the goal of appropriate voice in classroom. His voice was age appropriate at that point  (V.II,175:11-176:10)

73.     Marianne Merito testified that in her professional opinion, the speech/language services recommended for the 2007-08 school year were appropriate because individual therapy is what he needed and 45 minutes per week would be appropriate. (V.II,176:11-25)

74.     Marianne Merito testified that a mild/moderate SDC class would be appropriate for Student because it is a smaller class size, provides more individualized attention, has a lower adult staff-student ratio, and the students work on general education curriculum that is customized for them. (V.II,177:1-15)

75.     Marianne Merito testified that she disagreed with Dr. Reicks' prior testimony that a mild/moderate class is designed for mentally retarded students.  She further testified that her opinion was based on her teaching a mild /moderate class for 17 years and working with mild/moderate classes in the District as a speech pathologist. (V.II,177:16-178:13)

76.     Marianne Merito testified that a mild/moderate class was appropriate

005656.00038/1262142v1

for Student because he had difficulty in the academic program and she had a concern when he went from 3rd to 4th grade because of the class size increase, the pace of instruction, and the abstractness of the instruction. She felt the mild/moderate class having a smaller class size and higher teacher-to-student ratio and staff-to-student ratio would be less restrictive for him than a general education placement. (V.II,178:14-179:4)

77. Marianne Merito testified that she agreed with RSP teacher's concern about Student becoming prompt-dependent with a 1:1 aide, based on the 1:1 aide coming with him to individualized therapy. She further testified that over time, even though Student was capable of the correct response, he would turn to the aide before he would even attempt to respond, asking the aide what the right answer was or what his answer should be. (V.II,179:5-20)

78. Marianne Merito testified that she did not agree that Student should receive all of his instruction 1:1 because one of his difficulty areas is pragmatic communication which is social skills and social language, and it is impossible to increase development in the area working 1:1 with an adult. She further testified that he needs peer experiences, has interest in other children, and wants to have friends, but it is not possible is 1:1 setting. (V.II,179:21-180:10)

79. Marianne Merito testified that the mild to moderate SDC is a customized program and the customization is based on the IEP goals at the time of placement. (V.II,184:20-185:8)

80. Marianne Merito testified that the offer of services was made in June 2007, at the time she was working with Student (V.II, 192:12-23)

81. Janice Hunthausen, Audiologist, testified that she provided consult (classroom consult) to Student beginning in April 2006. (V.II, 200:1-6)

82. Janice Hunthausen testified that the audiology services she was to provide were consultation in the classroom. She would meet with the teacher and provide some directive regarding accommodations in the classroom, and just check

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005656.00038/1262142v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1  in on the Student to see how he was doing. (V.II, 202:5-12) (Exhibit 8 - IEP)

2  83.    Janice Hunthausen testified that she has a California license in

3  audiology which allows her to work with deaf and hard of hearing students in a

4  clinical or educational setting, including fit auditory instruments, monitor auditory

5  instruments, consult with teachers regarding speech and language development

6  (V.II, 209:24 - 210:11)

7  84.    Janice Hunthausen testified that she has worked more than 20 years as

8  an audiologist and another 5 years as a teacher of the deaf and hard of hearing; she

9  also has a rehab credential for the deaf and hard of hearing. (V.II, 210:25-211:22)

10  85.    Janice    Hunthausen    testified    that    she    collaborated    with    the

11  speech/language specialist, Mariane Merito, to draft goals for Student and the

12  collaboration was indicated in the notes of the IEP (exhibit 8). (V.II, 214:24 - 215:8)

13  86.    Janice Hunthausen testified that she had input on the goals/objectives

14  developed for Student. (V.II, 215:9-17)

15  87.    Janice Hunthausen admitted that in her expert opinion, the audiological

16  services offered in June 2006 IEP were appropriate for Student.  She testified they

17  were appropriate based on the fact that the purpose of the services was to provide

18  classroom consult regarding classroom modifications that would enhance his ability

19  to listen in the classroom, and provide that information to the teacher, John Chelini,

20  which was done. (V.II, 216:6-23)

21  88.    Janice Hunthausen testified that John Chelini communicated to her that

22  he felt that auditory access was not an issue for Student, and that he felt Student was

23  doing well in that area. (V.II, 216:24-217:12)

24  89.    Janice Hunthausen testified that she attended the April 2007 IEP and

25  provided input with the understanding that the meetings were apart of Student's

26  annual IEP (V.II, 217:21-218:1)

27  90.    Janice Hunthausen testified that during the 2007 annual IEP process, it

28  was her opinion that services 4x per year were appropriate to meet Student's

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   audiological needs. (V.II, 218:2-12)

2       91.    Guardian testified that she participated in the February 5, 2007 IEP

3   meeting, which was the first date of Student's annual review IEP. (Exhibit 11) (V.II,

4   225:4-16)

5       92.    Guardian admitted that RLC did not include its recommendations in its

6   summaries of assessment (V.II, 227:4-7)

7       93.    Guardian admitted that she first received a letter on June 21, 2007

8   regarding 2007 ESY and had previously discussed or been notified of the offer for

9   2007 ESY, placement and/or or services for the 2007-08 school year. (Exhibit 55)

10  (V.II, 231:15-232:4)

11      94.    Guardian admitted that she sent Mr. Adams a letter dated June 15,

12  2007 indicating that since an offer of FAPE for ESY was not given to Student she

13  was going to place him in a private placement and seek reimbursement.  (Exhibit 60)

14  (V.II, 232:9-18) and (V.II, 235:5-23)

15      95.    Guardian admitted that Student attended RLC for summer program

16  from July 1, 2007 through August 10, 2007.  (V.II, 234:22-235:4)

17      96.    Guardian testified that Student also attended RLC from August 14,

18  2007 through May 6, 2008. (V.II, 235:24-236:4)

19      97.    Guardian admitted that the RSP services were provided by the District

20  as required from February 2006 to June 2006 (V.II, 248:12-19)

21      98.    Guardian testified that a change in RSP services occurred in September

22  2006 when Student entered 5th grade. (V.II, 248:18-21)

23      99.    Rachel Gray testified that she was an employee of the Reading and

24  Language Center from January 2006 to August 2007.  (V.III 9:15-22).

25      100.   Rachel Gray further testified that she attended two IEP's for Student,

26  one in early February 2007, and the other in April 2007. (V.III, 13:10–14:12)

27      101.   Rachel Gray testified that Student's deficits are severe enough that he

28  needs social skills services somewhere other than RLC.  (V.III, 29: 10-21)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

102.   Rachel Gray testified that she is only allowed to discuss speech and language services, not general educational services.  (V.III, 31: 12-25)

103.   Rachel Gray admitted that it is best practice for the assessor to have observed Student in the classroom for purposes of their assessment report.  (V.III, 40:20-23)

104.   Rachel Gray admitted that none of the assessors had observed Student in the classroom setting, nor spoken to any of his teachers. (V.III, 41:1-11)

105.   Rachel Gray admitted that she did not know that the proper standard for ESY services was to maintain progress as opposed to increase abilities.  She further admitted that her recommendations are based on the needs of the child, and that she recommends what she feels would help the child to progress in speech and language skills. (V.III, 42:7-13)

106.   Rachel Gray admitted that she has never observed Student in any District program, and is not qualified to discuss occupational therapy or adaptive physical education services.  (V.III, 44:7-25)

107.   Rachel Gray testified that the District's offer included social skills intervention. She is not qualified to make recommendations regarding counseling and guidance, nor audiological services.   She last provided therapeutic services in August of 2007.  (V.III, 45:1-15)

108.   Rachel Gray explained how a determination of the child's least restrictive environment is made, but impeached her own report by stating that she is only qualified to discuss speech and language, but had recommended one-to-one instructional services in her report.  (V.III, 47: 9-48: 15)

109.   Rachel Gray admitted that she had a personal relationship with Plaintiff and never provided the District with Ex. 85. (V.III, 58:25-59:18)

110.   Ms Fleck testified that one session of the occupational therapy was not being provided because the Student was at a private school that is not within the District.  (V.III, 88:1-9)

005656.00038/1262142v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

111.   Guardian testified that the agreement states there are to be no verbal agreements, only what is stated in the IEP. (V.III, 150:23-151:21)

112.   Guardian testified that the IEP did not say that only one aide would provide services. (V.III, 161:1-18)

113.   Guardian testified that the special day class was more restrictive than general education, but then wanted the judge to order one to one placement.  (V.III, 164: 1- 165:14)

114.   Sara Morgan testified that she has Bachelor's degree in Communication and a Masters degree in Special Education from Chapman University, a K-12 General Education Credential, a Special Education Specialist Credential, and an Administrative Credential.  She worked previously as a special education teacher (SDC for 3 years) with Westminster School District, a resource teacher (RSP for one year) with Lutheran Special Education Ministries, and as an instructional assistant (2 years) with Salem Lutheran Elementary.  She worked with 75-100 students with autism as an IBI Supervisor.  (V.IV, 9:1-12:14)

115.   Sara Morgan testified that she was Student's IBI supervisor from the 2004-2005 school year to present.  (V.IV, 13: 1-16)

116.   Sara Morgan testified that the IBI instructional assistants implement IBI goals. She also testified that she the extra classroom support offered at the IEP was separate and apart from an IBI Instructional assistant.  (V.IV, 19:2-14)

117.   Sara Morgan testified that she provided the appropriate level of supervision and consultation after the Feb. 2006 IEP.  She also testified that progress was made, assistants that were working with Student felt supported, and questions were answered through discussions.  (V.IV, 21:17-22:24)

118.   Sara Morgan admitted that the IBI services were consistently provided for Student the entire time. (V.IV, 23:8-14)

119.   Sara Morgan testified that she felt the Student was making progress on the goals that were written based on her conversations with the aides that were

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    working with the Student, and her own observation and personal knowledge of the

2    Student.  (V.IV, 24:2-25)

3        120.    Sara Morgan testified that she had concerns that the Student was over-

4    dependent on a single aide and would rather go to adults for social interaction than

5    play with peers. .  (V.IV, 25:1-24)

6        121.    Sara Morgan admitted that she believes that Student being pulled out of

7    school affected the provision of IBI services.  (V.IV, 26:1-23)

8        122.    Sara Morgan testified that her understanding of the difference in

9    services for regular school year versus ESY is that during regular school year the

10   goal is to move the child forward and make progress, during the summer the idea is

11   to provide services so the student does not regress so far that they are not able to get

12   the skills back quickly at the beginning of the school year in order to continue to

13   make progress.  (V.IV, 27: 10-24)

14       123.    Sara Morgan testified that the pre-IEP meeting in January 2007 was

15   held to discuss the best possible placement for the Student.  (V.IV, 28: 2-29:21)

16       124.    Sara Morgan admitted that ESY goals one and two were appropriate.

17   (V.IV, 29: 22-30:5)

18       125.    Sara Morgan testified that she believes that the District's offer for the

19   2007-2008 school year was appropriate.  (V.IV, 30:6-20)

20       126.    Sara Morgan testified that it was a strong possibility that Student

21   would make more progress in socialization in an SDC class.  She also testified that

22   he could have been more successful in a special day class rather than a general

23   education class.  (V.IV, 32:1-18)

24       127.    Sara Morgan testified that it was not unusual for Dr. Lewis to attend

25   pre-IEP team meetings.  (V.IV, 37:13-38:1)

26       128.    Sara Morgan testified that she recommended changes in IBI services

27   for the 07-08 year.  She recommended that instead of pre-teaching in the morning, it

28   would be appropriate to have him work with a small group of students at the IBI

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

clinic, and for support to be provided to the Student during one of the recesses during his day. The changes were both qualitative and quantitative. More IBI services were offered in 07-08 IEP.  (V.IV, 38:21-39:23)

129.    Sara Morgan testified that the reasons why some IBI services had to be made up later included staff members getting sick, and cars breaking down.  For the services that were missed, makeup sessions were offered.  (V.IV, 41:1-7)

130.    Sara Morgan testified that bi-weekly consultations by the IBI behavioral staff were occurring between February 2006 and June 2007.  (V.IV, 43:4-13)

131.    Sara Morgan testified that the target behavior to be addressed by IBI services included exposing him to curriculum that he would be exposed to in the general education class room, as well as his socialization skills.  (V.IV, 47:6-17)

132.    Sara Morgan admitted that a one to one aide would not be appropriate for Student because of his dependency on adults. A one-to-one aide would increase his lack of generalization and ability to obtain information for group settings. It would inhibit his ability to socialize with his peers.  (V.IV, 53:24-54:16)

133.    Mai Van, School psychologist, testified that her qualifications include a Bachelor of Arts in Psychology (1995 UC Irvine), Bachelor of Arts in Sociology (1995 UCI), and a Ph.D. in Education with an emphasis in School Psychology (2002 UC Riverside).  She also has a Pupil Personnel Service Credential (2000). She assesses students with special needs.  (V.IV, 60:9-61:16)

134.    Mai Van testified that of the approximate 200 students she assesses per year, 5-10 have autism.  (V.IV, 62:5-24)

135.    Mai Van admitted that during the 2006-2007 school year, she collaborated 30 minutes per week with student's teacher and service providers. . (V.IV, 64:3-13)

136.    Mai Van testified that the offer for social skills services was discussed at the February 2006 meeting. The offer was for 30 minutes, once a week

005656.00038/1262142v1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1   consultation and collaboration within the classroom as a natural setting.   (V.IV,

2   66:14-21)

3      137.   Mai Van testified that her implementation of student's social skills

4   services provided an educational benefit. Socialization was a specific need for the

5   Student and he required extra support to help him become more independent with

6   his social skills. (V.IV, 68:21-69:10)

7      138.   Mai Van testified that the Student needed to be more independent. She

8   further testified that the one-to-one services provided a crutch for him and he relied

9   upon the support from adults for academic instruction, and even some social skills.

10   (V.IV, 69:11-70:4))

11      139.   Mai Van testified that the goal of ESY and the District's obligation to

12   extend services to a student during ESY is maintenance of current skill sets as

13   opposed to progression.  (V.IV, 71:19-72:6)

14      140.   Mai Van testified that in her opinion, Student needed instruction in a

15   group setting versus one-to-one services. She did not think one to one would be

16   beneficial to Student because of his special needs, which included the need to gain

17   more independence. He also needed to have other students around to model

18   behavior after.  (V.IV, 72:11-73:11)

19      141.   Mai Van testified that Dr. Reicks assessment showed Student had a

20   full scale assessment with an IQ of 64.  (V.IV, 78:16-18)

21      142.   Mai Van testified that Dr. Reick's recommendations were considered

22   by the IEP team.  (V.IV, 97:1-15)

23      143.   Mai Van testified that Dr. Reicks used an out of date version of the

24   cognitive assessments, the WISC-III-R.  She further testified that the WISC IV

25   exists and thus the WISC-III-R should not have been administered to Student.  (V.

26   III, 81:15-82:7).

27      144.   Scott Adams testified that he was a Program Supervisor for the District

28   admitted that the pre-meeting held in January 07, before February 2007, IEP was to

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1     discuss independence and anxiety.  (V.IV, 113:21-114:21)

2        145.   Scott Adams admitted that pre-IEP meetings are not uncommon. He

3     further admitted that the purpose is to document whether the student has made

4     adequate progress, and how to continue. If the student has not made progress, they

5     discuss how to improve, or offer other services or placements to make the student

6     more successful.  (V.IV, 117:23-118:9)

7        146.   Scott Adams testified that the representatives from RLC presented a

8     report at the February 5, 2007 meeting which gave a summary of information and

9     the recommendations were discussed extensively at the April 5, 2007 IEP team

10    meeting.  (V.IV, 121:2-18)

11       147.   Scott Adams testified that the June 15, 2007 meeting did not go

12    forward because the RSP teacher was ill and the audiologist was not present. Thus,

13    the Guardian chose not to go forward with the meeting.  (V.IV, 127:1-10)

14       148.   Scott Adams testified that the teachers' school year ended June 18th,

15    and therefore there could be no IEP meeting after that date. Parent then unilaterally

16    placed Student.  (V.IV, 129:3-18)

17       149.   Scott Adams testified that the District offered SDC instead of general

18    education for the 2007-2008 school year based on the fact that the Student was not

19    independently accessing the general education curriculum, and his anxiety was

20    increasing.  (V.IV, 134:15-135:5)

21       150.   Scott Adams testified that in a mild to moderate special day class the

22    curriculum is modified and accommodated to meet each individual student's needs.

23    It is often delivered at a slower pace; instruction is individualized based on the

24    students' needs, and there is a smaller student to staff ratio, yet the SDC still

25    provides access to peers.  (V.IV, 135:14-23)

26       151.   Scott Adams testified that Student was pulled out of class a total of 55

27    times during the 06-07 school year.  (V.IV, 137:1)

28       152.   Scott Adams testified that state standards for the Student include areas

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

1    such as English, language arts, math, social science, science, P.E., music and art.

2    (V.IV, 140:2-17)

3        153.    Scott Adams testified that a teacher-to-student ratio of 3:12 exists in

4    the mild to moderate SDC class. (V.IV, 140:22:25)

5        154.    Scott Adams testified that Guardian did not want to discuss the

6    proposed goals sent after the April 9, 2007 IEP, until June 15, 2007.  (V.IV, 155:13-

7    17)

8        155.    Scott Adams testified that after the June 15, 2007 IEP meeting did not

9    go forward, he was able to meet with Student's audiologist and RSP teacher before

10   sending the offer for 2007 ESY and 2007-2008 school year to Plaintiff.    (V.IV,

11   171:19-24)

12       156.    Guardian testified that it was the District who did not allow the June

13   15, 2007 meeting to go forward.  She also testified that she was told by CDE to

14   cancel the May 16, 2007 IEP.  (V.IV, 178:9-25; 179:1-10)

15       157.    Guardian testified that while Student is enrolled in RLC, he does social

16   studies, and science at home. (V.IV, 183:11-15)

17       158.    Guardian admitted that she did not file a home school affidavit with the

18   District.  (V.IV, 186: 15-20)

19       159.    The Student was awarded reimbursement for his unilateral placement

20   at RLC from November of 2006 through December of 2007.  (See ALJ Decision,

21   Pgs. 21-23, para. Nos. 69-74).

22       160.    The District's offer of placement for the 2007-2008 school year was

23   found to be appropriate to meet the Student's unique needs.  However, the ALJ

24   concluded that the proper offer was not appropriately explained to the Guardian.

25   (See ALJ Decision, Pg. 19, para. No. 50).

26       161.    The Guardian could have kept the Student enrolled in the District

27   where he would have received his core curriculum and still secured the services at

28   RLC.  (Exhibit 60) (V.II, 232:9-18) and (V.II, 235:5-23)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 ▪ (714) 826-5480
FACSIMILE: (562) 653-3333

## II.

## **CONCLUSIONS OF LAW**

1.     A district court reviews the decision of the hearing officer under a modified *de novo* standard. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-73 (9th Cir. 1993); *Glendale Unified School District v. Almasi*, 122 F. Supp. 2d 1093, 1100 (C.D. Cal. 2000)

2.     The Court's decision must be supported by the preponderance of the evidence.   20 U.S.C. § 1415(i)(2)(C)(iii).   The preponderance of the evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. v. Rowley*, 458 U.S. 176, at 206 (1982); 200 [102 S.Ct. 3034, 73 L.Ed.2d 690].

3.     The Court must give "due weight" to the administrative proceedings. *Id.*; *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891-92 (9th Cir. 1995).

4.     The Court "should give substantial weight to the hearing officer's decision if the court finds that the decision was careful, impartial and sensitive to the complexities presented." *Ojai*, 4 F.3d at 1476.

5.     The Court must consider the findings of the hearing officer carefully and endeavor to respond to the hearing officer's resolution of each material issue. *San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996).

6.     The petitioner in a special education administrative hearing has the burden to prove his or her contentions at the hearing. *Schaffer v. Weast* 546 U.S. 49 (2005), [126 S. Ct. 528, 163 L.ED.2d 387].   Accordingly, at the due process hearing Plaintiff had the burden of proof as to all issues.   The party challenging the administrative ruling bears the burden of proof on review by the district court. *Id.* at 1398-99.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

7.    In *Rowley* 458 U.S. 176 (1982), the United States Supreme Court determined that a student's IEP must be reasonably calculated to provide the student with some educational benefit, but that the IDEA does not require school districts to provide special education students with the best education available or to provide instruction or services to maximize a student's abilities. *Id.* at pp. 198-200. The Court stated that school districts are required to provide only a "basic floor of opportunity" that consists of access to specialized instructional and related services which are individually designed to provide educational benefit to the student. *Id.* at p. 201.

8.    To determine whether the district offered a student a FAPE, the analysis must focus on the adequacy of the district's proposed program. *Gregory K. v. Longview School District,* 811 F.2d 1314 (9th Cir. 1987). If the school district's program was designed to address the student's unique educational needs, was reasonably calculated to provide him some educational benefit, and comported with his IEP, then that school district provided a FAPE, even if the student's parents preferred another program and even if his parents' preferred program would have resulted in greater educational benefit. *Id.*

9.    The IDEA does not require that parental preferences be implemented, as long as the IEP is reasonably calculated to provide some educational benefits. *Blackmon v. Springfield R-XII School District* 198 F.3d 648, 658 (8th Cir. 1999).

10.    Reimbursement for unilateral private placements all stand for the proposition that reimbursement awards are only proper when there has been a FAPE denial and the Student is placed in an appropriate placement. Carter By and *Through Carter v. Florence County School Dist. Four,* 950 F.2d 156, 161.

11.    The ALJ has discretion in determining what equitable relief should be awarded. *Parents of Student W. v. Puyallup School Dist.*, No. 3 31 F.3d 1489, 1496 (9th Cir. 1994).

12.    Pre-IEP meetings by school district personnel are not only <u>not</u> a

1   procedural violation, but in most instances, are imperative in order to prepare for the

2   IEP team meetings.  *Burilovich v. Board of Educ. of Lincoln Consol. Schools* 208

3   F.3d 560, 568.

4        13.    The trier of fact may "accept part of the testimony of a witness and

5   reject another part even though the latter contradicts the part accepted."  *Stevens v.*

6   *Parke Davis & Co.*  9 Cal.3d 51, 67 (1973).

7        14.    The trier of fact may also "reject part of the testimony of a witness,

8   though not directly contradicted, and combine the accepted portions with bits of

9   testimony or inferences from the testimony of other witnesses thus weaving a cloth

10  of truth out of selected material."  *Id.* at 67-68, quoting from *Neverov v. Caldwell*

11  161 Cal. App.2d 762, 767 (1958).

12       15.    The fact finder may reject the testimony of a witness, even an expert,

13  although not contradicted.  *Foreman & Clark Corp. v. Fallon* 3 Cal.3d 875, 890

14  (1971).

15       16.    An expert's credibility may be evaluated by looking to his or her

16  qualifications.  *Grimshaw v. Ford Motor Co.* 119 Cal.App.3d 757, 786.(1981).  It

17  may also be evaluated by examining the reasons and factual data upon which the

18  expert's opinions are based.  *Griffith v. County of Los Angeles* 267 Cal.App.2d 837,

19  847 (1968).

20       17.    The demeanor of a witness is one factor to consider when assessing

21  their credibility, a factor not readily established in subsequent judicial review. "On

22  the cold record a witness may be clear, concise, direct, unimpeached,

23  uncontradicted—but on a face to face evaluation, so exude insincerity as to render

24  his credibility factor nil. Another witness may fumble, bumble, be unsure, uncertain,

25  contradict himself, and on the basis of a written transcript be hardly worthy of

26  belief.  But one who sees, hears and observes him may be convinced of his honesty,

27  his integrity, his reliability." *Wilson v. State Personnel Board*  58 CA3d 865, at

28  877-878 (1976), quoting *Meiner* v. *Ford Motor Co.*  17 Cal.App.3d 127, 140

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005656.00038/1262142v1

1   (1971).

2        18.    Plaintiff has already been awarded all of the equitable relief to which

3   she is entitled.

4        19.    The District considered the Student's expert's recommendations prior

5   to making its offer in June of 2007.

6        20.    Plaintiff has not established that the ALJ abused his discretion.

7        21.    Under the IDEA, schools are required to provide ESY services as

8   necessary in order to provide a child with a FAPE. 34 C.F.R. § 300.309(a). A

9   school must provide these services, however, only if the child's IEP team determines

10  that such services are necessary "for the provision of FAPE to the child." *Id.* "[A]

11  claimant seeking an ESY must satisfy an even stricter test, because 'providing an

12  ESY is the exception and not the rule under the regulatory scheme.' " *Bd. of Educ.*

13  *of Fayette County v. L.M.,* 478 F.3d 307, 315 (6th Cir.) (quoting *Cordrey v.*

14  *Euckert,* 917 F.2d 1460, 1473 (6th Cir.1990)), *cert. denied,* --- U.S. ----, 128 S.Ct.

15  693, 169 L.Ed.2d 513 (2007). "ESY Services are only necessary to a FAPE when

16  the benefits a disabled child gains during a regular school year will be significantly

17  jeopardized if he is not provided with an educational program during the summer

18  months." *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523, 537-38

19  (4th Cir.2002).    **N.B. v. Hellgate Elementary School Dist., ex rel. Bd. of**

20  **Directors, 541 F. 3d 1402.**

21

22  DATED: July 22, 2009   ATKINSON, ANDELSON, LOYA, RUUD & ROMO

23

24                    By: /s/ Marlon C. Wadlington
                          Justin R. Shinnefield, Esq.
25                        Marlon C. Wadlington, Esq.
                          Jabari A. Willis, Esq.
26                        Attorneys for GARDEN GROVE UNIFIED
                          SCHOOL DISTRICT
27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-9597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005656.00038/1262142v1

**PROOF OF SERVICE**

(Code Civ. Proc. § 1013a(3))

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 17871 Park Plaza Drive, Suite 200, Cerritos, CA 90703-8597.

On July 22, 2009, I served the following document(s) described as **DEFENDANT GARDEN GROVE UNIFIED SCHOOL DISTRICT'S PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL REVERSAL OF ADMINISTRATIVE DECISION** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Tania L. Whiteleather                    Attorney for Alexis Baquerizo
Law Office of Tania L. Whiteleather
5445 E. Del Amo Blvd., Ste. 207
Lakewood, CA  90712
(562) 866-8755
fax (562) 866-6875

☒       **BY ELECTRONIC MAIL:** I have caused the above-mentioned document(s) to be electronically served on the above-mentioned person(s), who are currently on the list to receive e-mail notices for this case.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 22, 2009 at Cerritos, California.

                                        /s/ Marlon C. Wadlington
                                        MARLON C. WADLINGTON

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE, SUITE 300
CERRITOS, CALIFORNIA 90703-8597
TELEPHONE: (562) 653-3200 • (714) 826-5480
FACSIMILE: (562) 653-3333

005656.00038/1262142v1

-23-