1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11  C.B., a minor, by and          )   SA CV 08-1047 RSWL (CWx)
    through his Guardian Ad        )
12  Litem, ALEXIS BAQUERIZO,       )
                                   )   **FINDINGS OF FACT AND**
13              Plaintiff,         )   **CONCLUSIONS OF LAW**
                                   )
14       v.                        )
                                   )
15                                 )
    GARDEN GROVE UNIFIED SCHOOL    )
16  DISTRICT,                      )
                                   )
17              Defendant.         )
                                   )
18  _____ )

19       A court trial was conducted in this matter on July

20  15, 2009.  Tania Whiteleather appeared on behalf of

21  Plaintiff, and Marlon Wadlington appeared for

22  Defendant.  Having considered the administrative

23  record, the trial briefs of both parties, and oral

24  argument at trial, the Court **HEREBY FINDS AS FOLLOWS:**

25  <u>Findings of Fact</u>

26       Student was born June 6, 1944 and resides within

27  the Garden Grove Unified School District with Guardian,

28  who is her maternal aunt and legal guardian.

1    Student is eligible for special education and
2 related services in the categories of autistic-like
3 behaviors and other health impairments due to attention
4 deficit disorder.
5    Student's annual Individualized Education Program
6 (IEP) was held February 8, 2006 and February 26, 2006.
7 The IEP team determined that Student had unique needs
8 in reading comprehension, math, math applications,
9 written communications strategies, pre-vocational,
10 psychomotor (gross motor skills), socialization, fine
11 motor skills, and social skills communication.
12    At the February 8 and 26, 2006 IEP meetings, the
13 District offered placement at Cook Elementary School,
14 and various individualized services.  The services
15 included: speech and language (SL) therapy for 45
16 minute pull-out individual and 45 minutes in class per
17 week; adaptive physical education (APE) weekly
18 collaboration for 30 minutes and direct supervision for
19 30 minutes every other week; Resource Specialist
20 Program (RSP) for 345 minutes per week for reading
21 comprehension and math; occupational therapy (OT) for
22 45 minutes two times per week, once at school and once
23 at the OT clinic; extra classroom aide for five hours
24 per day on school days; intensive behavior intervention
25 (IBI) services for 30 minutes prior to school for pre-
26 teaching and socialization opportunities, 20 minutes at
27 morning recess and 40 minutes at lunch recess to
28 address socialization; and social skills for 30 minutes

per week for consultation within the class and recess in the natural setting.  Guardian did not consent to this IEP.

On February 24, 2006, Guardian filed a dissent letter to be attached to the IEP.  Guardian believed more services were needed throughout the school day, including further behavioral supervision and consistent aide services throughout the day.

Further IEP meetings were conducted on behalf of Student on June 15, 2006 and October 13, 2006.  The June 15, 2006 IEP modified Student's program beginning September 2006 to include SL services for 45 minutes twice weekly, one-to-one pull-out service, and audiology services for 30 minutes one time in September and one time per quarter afterwards.  The October 13, 2006 meeting included discussions regarding Guardian's allegation that Student was not receiving SL and reading comprehension services, and notice that Guardian would be obtaining private services and seeking reimbursement from the District.

Another IEP meeting was conducted on Student's behalf on February 5, 2007.  However, this meeting was not completed.  The IEP team agreed to reconvene in March 2007, which was later rescheduled to April 9, 2007.  However, this meeting was again not completed at this time.  The team agreed to meet again in May 2007 to complete the IEP, which was later rescheduled to June 15, 2007.  This June 15, 2007 meeting did not go

3

1  forward because members of the IEP team were not able
2  to attend, and Guardian would not waive the presence of
3  these team members.

4      On June 18, 2007 Guardian delivered a letter to
5  District dated June 15, 2009 informing them that
6  because Student did not have an offer of placement, she
7  would privately place student and seek reimbursement.

8      On June 20, 2007 the District sent a Notice of
9  Proposed Action and Refused Actions to Guardian denying
10 the request contained in her June 15, 2007 letter and
11 making an offer of placement for Extended School Year
12 (ESY) 2007.  The District offered placement in general
13 education (GE) at Excelsior Elementary School, extra
14 classroom support aide and SL for 30 minutes, one time
15 per week individual service.  The letter noted that the
16 District considered input from the IEP team members,
17 including discussions at the prior IEP meetings, and
18 reviews of Student's performance.

19     The June 20, 2007 letter from District to Guardian
20 also included an offer of placement from September 2007
21 to the annual review in February 5, 2008.  The District
22 offered Student specialized academic instruction for
23 1550 minutes per week in a mild-moderate special day
24 class (SDC) at Hill Elementary School, with the
25 following services: extra classroom aide support 300
26 minutes per day for the first four weeks, with a fade
27 plan reduction of 75 minutes per day each week for four
28 weeks; SL for 45 minutes one time per week individual

4

instruction, OT for 45 minutes one time per week
individual therapy in the OT clinic and 45 minutes one
time per week school-based individual therapy; IBI for
90 minutes per week after school in the IBI clinic and
20 minutes recess support, to ensure generalization of
social skills and functional communication skills
learned in the IBI clinic; APE for two 30-minute
collaboration sessions per month, and two 30-minute
consultation sessions per month, in collaboration and
consultation with the GE physical education teacher;
and counseling and guidance services 30 minutes per
week collaboration in the SDC by a school psychologist;
and audiology services for 30 minutes of consultation
four times per year in the SDC.

     In a letter dated August 14, 2007, Guardian's
attorney rejected the District's offered placement and
indicated that Guardian would self-fund placement for
Student and seek reimbursement.  Guardian rejected the
offer of placement because it offered an SDC when
student had previously been in GE, did not include an
offer for proper transition from GE to SDC, did not
include an offer of aide support, and did not offer
goals and objectives for the proposed SDC.

     After Guardian rejected the District's offered
placement, Student received instruction at RLC.
Student originally began receiving supplemental
services at RLC in November 2006, and began attending
RLC exclusively in June 2007.  Student attended RLC

1  exclusively for the summer program from June 1, 2007 to
2  August 10, 2007, and again for the entire 2007-2008
3  school year.   These services were paid for by Guardian.
4       RLC provides individual and small group interaction
5  in the areas of reading, writing, math instruction, and
6  SL services.   RLC does not provide social skills
7  training and does not have a behaviorist or school
8  psychologist on staff.   Pursuant to its certification
9  from the state of California, the RLC can only provide
10 language based services.   Therefore, RLC can provide
11 math word problems and vocabulary, but not arithmetic
12 calculation.   RLC is a nonpublic agency (NPA), but is
13 not a certified nonpublic school (NPS).
14      While at RLC, Student had made significant growth
15 in his reading comprehension, IQ, and OT needs.
16 Student also seemed less anxious and more confident.
17 Student therefore benefitted from the services at RLC,
18 and made progress on his goals.
19 <u>Applicable Law</u>
20      Under the IDEA, children with disabilities have the
21 right to a FAPE, meaning special education and related
22 services must be made available to the child at no
23 charge to the parent or guardian.   20 U.S.C. § 1401.   A
24 FAPE must meet state educational standards and conform
25 to the child's IEP.
26      There are two parts to the legal analysis of
27 whether a school district is in compliance with the
28 IDEA.   First, the court examines whether the district

1  has complied with the procedures set forth in the IDEA.

2  Board of Educ. V. Rowley, 458 U.S. 176, 206-07 (1982).

3  Second, the court examines whether the IEP developed

4  through these procedures was reasonably calculated to

5  enable the child to receive education benefit.  Id.

6     The IDEA does not require school districts to

7  provide the services which maximize a student's

8  abilities.  Rather, school districts are required to

9  provide only a "basic floor of opportunity" consisting

10 of access to specialized instruction and related

11 services individually designed to provide educational

12 benefit.  Id.

13    Procedural errors in the IEP process do not require

14 an automatic finding of denial of a FAPE.  Procedural

15 violations constitute a FAPE denial only if the

16 procedural inadequacies impeded the child's right to a

17 FAPE, caused deprivation of educational benefits, or

18 significantly impeded the parents' opportunity to

19 participate in the IEP process.  20 U.S.C. §

20 1415(f)(3)(E).

21    When a school district does not perform exactly as

22 detailed in the IEP, the district does not violate the

23 IDEA unless it is shown to have materially failed to

24 implement the student's IEP.  Van Duyn v. Baker Sch.

25 Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007).

26    When a school district fails to provide a FAPE to a

27 student with a disability, the student is entitled to

28 relief that is appropriate in light of the purposes of

1  the IDEA.   <u>School Committee of Burlington v. Dept. of</u>
2  <u>Education</u>, 471 U.S. 359, 369-71 (1985).   The IDEA
3  permits both reimbursement and compensatory education
4  as a form of equitable relief, after the court balances
5  the behavior of the parties.   The award must be
6  reasonably calculated to provide the educational
7  benefits that likely would have accrued from special
8  education services the school district should have
9  supplied.

10      A school district is not required to pay for the
11  cost of education, including special education and
12  related services, for a pupil attending non-public
13  school or private school if the district made a proper
14  FAPE available to student, which was rejected by the
15  parents.   However, a district may be required to
16  reimburse a pupil's parents for the costs of a non-
17  public or private school if the child previously
18  received special education services from the district,
19  and the district failed to make a FAPE available to the
20  student.   20 U.S.C. § 1412(a)(10)(C).

21      To receive reimbursement or compensatory education,
22  parents need to provide the exact placement or services
23  required under the IDEA.   Parents must only provide a
24  placement or services that address the student's needs
25  and provide the student with educational benefit.
26  <u>Florence County Sch. Dist., Four v. Carter</u>, 510 U.S. 7
27  (1993).
28  <u>Administrative Proceedings</u>

1        Guardian filed an IDEA due process hearing
2   complaint on August 20, 2007.  The matter came before
3   Administrative Law Judge (ALJ) Richard M. Clark on May
4   5 through May 8, 2008.  The issues presented were:
5        1.   Did the District commit substantive violations
6             of the Individuals with Disabilities Act (IDEA)
7             by:
8             (A)  Failing to provide the following services
9                  in accordance with the February 8, 2006
10                  IEP: IBI services from February 8, 2006 to
11                  June 21, 2007; social skills services from
12                  September 2006 to June 20, 2007; RSP from
13                  April 1, 2007 to June 20, 2007; and
14                  appropriate one-to-one aide services from
15                  February 8, 2006 to March 31, 2007;
16             (B)  Failing to provide SL and audiology
17                  services in accordance with the June 15,
18                  2006 IEP?
19             (C)(1) Did the District deny Student a free and
20             appropriate education (FAPE) at the June 15,
21             2006 IEP by failing to create appropriate goals
22             and objectives to meet Student's unique needs
23             in SL, audiology, central auditory processing
24             disorder, and anxiety?  (2) Did the District
25             deny Student a FAPE by failing to create
26             appropriate goals to address Student's unique
27             need in the area of anxiety at the October 13,
28             2006 IEP?

1        (D) Failing to make an offer of placement and
2             services for the period between February
3             22, 2007 and June 20, 2007;
4        (E) Failing to develop, adopt and implement
5             any and/or appropriate goals and
6             objectives from February 22, 2007 to the
7             present;
8        (F) Failing to offer Sl goals and objectives,
9             OT, or IBI services for the 2007 ESY;
10       (G) Failing to make an offer of placement and
11            services on June 20, 2007, for the 2007-
12            2008 school year that was appropriate to
13            meet Student's unique educational needs
14            by: (1) offering SDC instead of GE; (2)
15            failing to offer any mainstream time in
16            GE; (3) failing to offer a proper
17            transition from GE to SDC; (4) failing to
18            offer aide support when Student had
19            previously had an aide; and (5) failing to
20            offer goals and objectives for the
21            proposed SDC, and offering inappropriate
22            goals and objectives based upon a GE
23            classroom teacher when Student was offered
24            an SDC?
25    2. Did the District deny Student a FAPE by
26       committing procedural violations of the IDEA
27       by:
28       (A) At the October 13, 2006 IEP, failing to

respond to Student's parents' request for SL and reading comprehension services by an NPA;

(B)   Failing to consider Independent Education Evaluations (IEE) and proposed goals prepared by the RLC and Dr. Reicks, and submitted to the District on February 5, April 9, and June 13, 2007;

(C)   Failing to provide Student's parents with accurate and complete copies of Student's records, including copies of IEP documents, from February 5 to April 9, 2007;

(D)   Failing to timely hold an IEP meeting in spring 2007 and eventually giving Student an offer of placement and services on June 20, 2007, without an IEP team meeting?

In bringing the administrative action, Guardian requested reimbursement for services rendered by the RLC, including travel costs to and from RLC. Guardian requested reimbursement for RLC expenses in the amount of $41,693.75 out of pocket to send Student to RLC from November 29, 2006 to the end of the 2007-2008 school year, plus an additional $1291.50 for the May 2008 services for a total of $42,985.25. Guardian also incurred mileage from home to RLC totaling 7036 miles, which represented 143 school days from September 2007 to April 2008, four trips per day at 49.2 miles per

day.   Guardian paid $3370 out of pocket for the cost of
RLC during ESY 2007.   For the period of August 14, 2007
through December 2007, Guardian made four trips to RLC
per day at 49.2 miles per day, for 68 school days, for
total mileage of 3345.60.   Guardian also spent $3280
out of pocket for RLC for the period of November 2006
to June 19, 2007.   For the period of August 14, 2007,
the day the 2007-2008 school year began, through
December 2007, Guardian paid $15,389.58 to RLC.

     With regard to the questions presented, the
Administrative Law Judge found as follows:

> *Did the District commit substantive violations of*
> *the IDEA by failing to provide the following*
> *services in accordance with the February 8, 2006*
> *IEP: IBI services from February 8, 2006 to June 21,*
> *2007; social skills services from September 2006 to*
> *June 20, 2007; RSP services from April 1, 2007 to*
> *June 20, 2007; and appropriate one-to-one aide*
> *services from February 8, 2006 to March 31, 2007?*

- The District provided IBI services in
  accordance with the February 8, 2006 IEP.   To
  the extent that any services were missed, the
  District proposed a compensatory education plan
  for those services.   In any event, the missed
  services do not rise to the level of a material
  failure to implement the IEP.

- The District provided social skills services in
  accordance with the February 8, 2006 IEP.

There was no requirement that the services be provided at any particular time of the day and Student conceded that he received the services, but not at the times Guardian believed he should have received them.

- The District provided RSP services in accordance with the February 8, 2006 IEP.  To the extent that any services were missed, the evidence established that they were later provided to Student and there was no material nonconformity with the IEP.

- The District provided one-to-one aide services in accordance with the February 8, 2006 IEP.

*Did the District commit substantive violations of the IDEA by failing to provide SL and audiology services in accordance with the June 15, 2006 IEP?*

- The District did not provide SL services in accordance with the June 15, 2006 IEP.  The District missed SL services and offered 360 minutes of compensatory services at the October 13, 2006 IEP.  The missed SL services were a material departure from the SL service required by Student's IEP.

- The District provided audiology service in accordance with the June 15, 2006 IEP, with the exception of the September 2006 consultation. The evidence showed that Ms. Hunthausen did not conduct the consultation in September 2006,

even though she contacted the classroom teacher
and set up a time to meet.  The service was
conducted on October 3, 2006, and there was no
evidence that the error was a material
nonconformity with the IEP.

*Did the District deny Student a FAPE at the June
15, 2006 IEP by failing to create appropriate goals
and objectives to meet Student's unique needs in
SL, audiology, central auditory processing
disorder, and anxiety?*

- The District denied Student a FAPE by failing
  to create appropriate goals and objectives to
  meet Student's unique needs in SL, audiology,
  and central processing disorder at the June 15,
  2006 IEP meeting.

- The District did not deny Student a FAPE by
  failing to create an appropriate goal to
  address anxiety at the June 15, 2006 IEP
  meeting.  There was no evidence that Student
  had a unique need in the area of anxiety at
  that meeting.

*Did the District deny Student a FAPE by failing to
create appropriate goals to address Student's
unique need in the area of anxiety at the October
13, 2006 IEP?*

- The District denied Student a FAPE by failing
  to create an appropriate goal to address
  Student's unique need in the area of anxiety at

the October 13, 2006 IEP meeting.

*Did the District deny Student a FAPE by failing to*
*make an offer of placement and services for the*
*period between February 22, 2007 and June 20, 2007?*

• The District did not deny Student a FAPE by
  failing to make an offer of placement from
  February 22, 2007 to June 20, 2007.

*Did the District deny Student a FAPE by failing to*
*develop, adopt and implement any and/or appropriate*
*goals and objectives frm February 22, 2007 to the*
*present?*

• The District did not deny Student a FAPE by
  failing to develop appropriate goals for
  Student from February 22, 2007 to the present.
  The evidence established that the goals were
  proposed and were being drafted, but the
  District never followed through with the
  revision of the goals as stated in the IEP
  documents.  However, there was no loss of
  education al benefit to Student while the goals
  were being finalized.  He was regularly
  attending school and making educational
  progress.

*Did the District deny Student a FAPE by failing to*
*offer SL goals and objectives, OT, or IBI services*
*of the 2007 ESY?*

• The District denied Student a FAPE when it made
  a written offer on June 20, 2007, for ESY 2007.

15

1        The offer was not appropriate because it did
2        not address all areas of Student need,
3        specifically in OT, which was necessary to
4        prevent regression.

5    *Did the District deny Student a FAPE by failing to*
6    *make an offer of placement and services on June 20,*
7    *2007, for the 2007-2008 school year that was*
8    *appropriate to meet Student's unique education*
9    *needs by: (1) offering an SDC instead of GE; (2)*
10   *failing to offer any mainstream time in GE; (3)*
11   *failing to offer a proper transition from GE to*
12   *SDC; (4) failing to offer aide support when Student*
13   *had previously had an aide; and (5) failing to*
14   *offer goals and objectives for the proposed SDC,*
15   *and offering inappropriate goals and objectives*
16   *based upon GE classroom teacher when Student was*
17   *offered an SD?*

18   •    The District did not deny Student a FAPE in its
19        written offer on June 20, 2007, by offering
20        Student an SDC instead of GE, not including an
21        offer of a one-to-one aide, and not including a
22        transition from the GE to an SDC.  The District
23        also did not deny Student a FAPE by not
24        developing goals based upon the SDC placement.
25        The offer should have included proposed goals
26        and objectives to be implemented, even though
27        there was no requirement that goals be specific
28        to one classroom.  Goals are designed to

                              16

address need regardless of where they are to be
implemented.  The offer did not indicate what
goals would be implemented, but it is
reasonable to expect that the IEP team would
have met again to finalize goals for the school
year.  The offer addressed Student's unique
needs and was designed to provide him
educational benefit.

- The District denied student a FAPE in the June
  20, 2007 written offer of placement by failing
  to include any time in the GE in the offer and
  include an explanation about why Student needed
  to be in an SDC when he had previously been in
  the GE full time.  The District was proposing
  to move Student to a more restrictive setting
  and therefore the offer to Guardian should have
  been more detailed.

*Did the District deny Student a FAPE at the October
13, 2006 IEP by failing to respond to Student's
parents' request for SL and reading comprehension
services by an NPA?*

- The District did not deny Student a FAPE by
  failing to respond to Guardian's request for
  NPA services.  The evidence did not establish
  any loss of education benefit or impede
  Student's right to a FAPE.  The evidence also
  showed that Guardian was actively and
  meaningfully participating in the IEP process.

17

*Did the District deny Student a FAPE by failing to consider IEEs and proposed goals prepared by the RLC and Dr. Reicks and submitted to the District on February 5, April9, and June 13, 2007?*

- The IEP team discussed reports from RLC at the February 9 meeting and RLC staff members provided a review of their assessments and the team asked questions.  The goals proposed by the RLC presented at the April 9, 2007 IEP meeting were not discussed at any IEP meeting. However, Mr. Adams considered the goals prior to making an offer of placement to Student on June 20, 2007.  Further, the goals were considered by Student's service providers as well.  There was no FAPE denial based upon the District's alleged failure to consider the proposed goals from the RLC.  Further, Dr. Reicks' report dated March 27, 2007, was not considered at any IEP meeting, but the District established that the report in the form of a letter from Dr. Reicks was not appropriate and therefore did not need to be considered by the District.  However, the evidence established that Mr. Adams considered Dr. Reicks' report prior to making the June 20, 2007 written offer of placement and there was no FAPE denial related to consideration of Dr. Reicks' report.

*Did the District deny Student a FAPE by failing to*

18

*provide Student's parents with accurate and*
*complete copies of Student's records, including*
*copies of IEP documents, from February 5 to April*
*9, 2007?*

- The District did not deny Student a FAPE by
  failing to provide accurate and complete
  student records. The evidence was insufficient
  to establish any denial of FAPE related to
  school records. The evidence showed that
  Guardian was provided records and that draft
  IEP notes were submitted to CDE with the
  incorrect date, but Student otherwise had those
  records. There was no FAPE denial.

*Did the District deny Student a FAPE by failing to*
*timely hold an IEP meeting in Spring 2007 and*
*eventually giving Student an offer of placement and*
*services on June 20, 2007, without an IEP team*
*meeting?*

- The District did not deny Student a FAPE by
  failing to timely hold an IEP meeting in the
  spring of 2007 and by making a written offer to
  Student without first holding an IEP meeting.
  The District was obligated to make Student a
  specific, written offer for services and it did
  so.

In all, the Administrative Law Judge found that the
District failed to provide Student a FAPE by:

- Failing to provide SL services in accord with

the June 15, 2006 IEP;

• Failing to develop and implement a goal to
  address his unique need in the area of auditory
  processing after June 15, 2006;

• Failing to develop a goal and address Student's
  need in the area of anxiety after October 13,
  2006;

• Failing to make Student an appropriate offer
  for ESY 2007 by failing to include OT services;
  and

• Failing to include the amount of time Student
  would spend in GE in the offer and include an
  explanation why an SDC was more appropriate in
  the offer of placement in June 2007.

The Administrative Law Judge found that Guardian is
entitled to reimbursement for the period November 2006
through ESY 2007.  The ALJ found RLC to be appropriate
for summer placement, and was designed to provide
educational benefit during the summer months when
school is not in session.  Therefore, the
Administrative Law Judge found that Student is entitled
to reimbursement for the period of November 2006
through ESY 2007, in the amount of $7190 plus mileage.

However, the ALJ found RLC was not an appropriate
full-time placement for Student because it did not meet
all of Student's educational needs, including needs for
peer interaction and social skills development that
cannot be addressed at RLC.  Therefore, the ALJ

20

determined that full reimbursement for RLC expenses during the full-time school year was not appropriate. However, because of the failure of the District to include GE time in the offer of placement for the 2007-2008 school year and otherwise include an explanation about why an SDC was appropriate when Student had previously been in the GE full time, the ALJ awarded Guardian an additional reimbursement for one semester of the 2007-2008 school year while at RLC, in the amount of $15,389.58, plus mileage.  In all, the ALJ awarded Guardian $22,579.58 for RLC services and $1689.53 for mileage, for a total award of $24,269.11.

Standard of Review

A district court reviews the decision of the hearing officer in an administrative proceeding under a modified *de novo* standard.  <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471-73 (9th Cir. 1993).  The Court must give due weight to the administrative proceedings, particularly where the administrative decision was "careful, impartial and sensitive to the complexities presented."  <u>Id.</u> at 1476; <u>see also</u> <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1524 (9th Cir. 1994).  However, the district court is free to accept or reject the findings of the hearing officer as a whole or in part.  <u>County of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996).

Conclusions of Law

1    The Court finds that the proceedings and decision
2  of the Administrative Law Judge in this matter were
3  thorough, impartial, and sensitive to the complex
4  issues presented in this case.  The decision of the ALJ
5  gives an exhaustive background and proceeds through
6  each issue with an analysis of the evidence presented
7  on each side, an analysis of its credibility, and a
8  well-reasoned conclusion on each of the challenged
9  issues.  The Court notes that the ALJ was present for
10 the testimony of each of the witnesses, and therefore
11 is a better judge of credibility than this Court.
12 Therefore, the Court will give substantial weight to
13 the factual findings of the Administrative Law Judge.
14   The Administrative Law Judge found some violations
15 of FAPE, and awarded Guardian partial reimbursement of
16 out of pocket payments made to RLC.  The awarded
17 reimbursement corresponds to payments made during the
18 2006-2007 school year, including ESY 2007, for the FAPE
19 violations during that time.  The ALJ permitted this
20 reimbursement because RLC was an appropriate placement
21 for Student during this time.
22   The ALJ noted that placement at RLC was not
23 appropriate after this time, which corresponded to the
24 2007-2008 school year.  The ALJ determined that because
25 RLC is a nonpublic agency, rather than a nonpublic
26 school, it was not equipped to provide all the services
27 Student required.  Therefore, the ALJ seemed initially
28 inclined to deny reimbursement for this period.

However, because the District did not properly document why a placement in SDC was more appropriate than a placement in GE, which constituted a denial of FAPE, the ALJ awarded reimbursement for half of the 2007-2008 school year.  This amount was awarded even though the ALJ found that the offer of placement by the District for the 2007-2008 school year was appropriate and did not constitute a FAPE violation.

Guardian challenges the amount awarded because it constitutes approximately half of the amount actually expended for services at RLC.  Guardian notes that Student made progress and received educational benefits at RLC, despite the fact that RLC is a nonpublic agency, rather than a nonpublic school.

In <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7 (1993), the Supreme Court considered the question of whether private school placement by a parent after a FAPE denial by a school district was proper under the IDEA.  The Court determined that such placement is proper, even when "the parents choose a private school that is not approved by the State or that does not comply with all the terms of the IDEA." <u>Id.</u> at 11.  The Court concluded that placement in a private school is proper "if the education provided by the private school is reasonably calculated to enable the child to receive educational benefits." <u>Id.</u>

Here, the ALJ determined that Student received educational benefits during his enrollment at RLC.

1   Student's IQ increased, and he made progress on his

2   reading comprehension and OT needs.   Student also

3   showed improvement in his behavior and anxiety-related

4   problems.   In addition, Student had been attending RLC

5   for supplemental services at the time of his placement,

6   and had made progress in his educational and social

7   goals.   Therefore, this Court finds that the education

8   provided by RLC was reasonably calculated to enable

9   Student to receive educational benefits.

10      RLC however, is not a properly certified nonpublic

11  school.   Rather, RLC is a nonpublic agency which is

12  designed to provide supplemental services in addition

13  to enrollment in a full-time school.   RLC is not

14  equipped to meet all of Student's needs.   On the basis

15  of this distinction between a nonpublic school and

16  nonpublic agency, the ALJ determined that placement at

17  RLC was not proper.

18      It is unclear whether this distinction between a

19  nonpublic school and a nonpublic agency is material for

20  a determination of reimbursement under the IDEA.   This

21  Court disagrees with the importance of this distinction

22  made by the ALJ.   While it is true that <u>Florence County</u>

23  <u>Sch. Dist. Four v. Carter</u> and the other cases which

24  consider this issue consider placement within nonpublic

25  schools, the cases have found that educational benefit

26  is the proper standard for placement, not State

27  requirements or the strict guidelines of the IDEA.   The

28  Court in <u>Carter</u>, for example, noted that "[n]or do we

believe that reimbursement is necessarily barred by a
private school's failure to meet state education
standards."   Although reference is made to a private
"school," the idea that proper placement is determined
by educational benefit to the student rather than by
adherence to strict standards is clear.   Likewise, in
Carter v. Florence County School District, 950 F.2d 156
(4th Cir. 1991), the court noted that several courts
"have allowed reimbursement despite the absence of
state approval of the private school chosen by the
parents."   Id. at 163.   Rather, "when a public school
system has defaulted on its obligations under the Act,
a private school placement is proper under the Act if
the education provided by the private school is
reasonably calculated to enable the child to receive
educational benefits."   Id.   Therefore, the yardstick
by which to determine whether reimbursement is proper
is whether the placement affords the student
educational benefits.

     Here, it seems clear that student received
educational benefits from the services he obtained at
RLC.   While the District argues that this distinction
between a nonpublic school and nonpublic agency should
prevent reimbursement, the Court is not referred to
authority for this proposition, nor are reasons given
for such a distinction.   Therefore, the Court is not
persuaded that the distinction between a nonpublic
school and a nonpublic agency is material to

1  reimbursement in light of the facts of this case and
2  the purposes of the IDEA.   Accordingly this Court finds
3  that the Guardian should be reimbursed for the full
4  amount claimed for services provided by RLC to Student.
5  Plaintiff counsel is to submit a proposed judgment for
6  this Court's use.
7
8  **IT IS SO ORDERED.**                     / s /
9                             _____
10                                **HONORABLE RONALD S.W. LEW**
11                                Senior, U.S. District Court Judge
12
13 DATED:   September 1, 2009
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26