1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

C.B., a minor, by and
through his Guardian Ad
Litem, ALEXIS BAQUERIZO,

               Plaintiff,

   v.

GARDEN GROVE UNIFIED SCHOOL
DISTRICT,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SA CV 08-1047 RSWL (CWx)

**AMENDED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

    A court trial was conducted in this matter on July 15, 2009.  Tania Whiteleather appeared on behalf of Plaintiff, and Marlon Wadlington appeared for Defendant.  Having considered the administrative record, the trial briefs of both parties, and oral argument at trial, the Court **HEREBY FINDS AS FOLLOWS:**

<u>Findings of Fact</u>

    Student resides within the Garden Grove Unified School District with Guardian, who is her maternal aunt and legal guardian.

1

Student is eligible for special education and related services in the categories of autistic-like behaviors and other health impairments due to attention deficit disorder.

Student's annual Individualized Education Program (IEP) was held February 8, 2006 and February 26, 2006. The IEP team determined that Student had unique needs in reading comprehension, math, math applications, written communications strategies, pre-vocational, psychomotor (gross motor skills), socialization, fine motor skills, and social skills communication.

At the February 8 and 26, 2006 IEP meetings, the District offered placement at Cook Elementary School, and various individualized services.  The services included: speech and language (SL) therapy for 45 minute pull-out individual and 45 minutes in class per week; adaptive physical education (APE) weekly collaboration for 30 minutes and direct supervision for 30 minutes every other week; Resource Specialist Program (RSP) for 345 minutes per week for reading comprehension and math; occupational therapy (OT) for 45 minutes two times per week, once at school and once at the OT clinic; extra classroom aide for five hours per day on school days; intensive behavior intervention (IBI) services for 30 minutes prior to school for pre-teaching and socialization opportunities, 20 minutes at morning recess and 40 minutes at lunch recess to address socialization; and social skills for 30 minutes

1  per week for consultation within the class and recess
2  in the natural setting.  Guardian did not consent to
3  this IEP.

4       On February 24, 2006, Guardian filed a dissent
5  letter to be attached to the IEP.  Guardian believed
6  more services were needed throughout the school day,
7  including further behavioral supervision and consistent
8  aide services throughout the day.

9       Further IEP meetings were conducted on behalf of
10  Student on June 15, 2006 and October 13, 2006.  The
11  June 15, 2006 IEP modified Student's program beginning
12  September 2006 to include SL services for 45 minutes
13  twice weekly, one-to-one pull-out service, and
14  audiology services for 30 minutes one time in September
15  and one time per quarter afterwards.  The October 13,
16  2006 meeting included discussions regarding Guardian's
17  allegation that Student was not receiving SL and
18  reading comprehension services, and notice that
19  Guardian would be obtaining private services and
20  seeking reimbursement from the District.

21       Another IEP meeting was conducted on Student's
22  behalf on February 5, 2007.  However, this meeting was
23  not completed.  The IEP team agreed to reconvene in
24  March 2007, which was later rescheduled to April 9,
25  2007.  However, this meeting was again not completed at
26  this time.  The team agreed to meet again in May 2007
27  to complete the IEP, which was later rescheduled to
28  June 15, 2007.  This June 15, 2007 meeting did not go

1   forward because members of the IEP team were not able
2   to attend, and Guardian would not waive the presence of
3   these team members.

4       On June 18, 2007 Guardian delivered a letter to
5   District dated June 15, 2009 informing them that
6   because Student did not have an offer of placement, she
7   would privately place student and seek reimbursement.

8       On June 20, 2007 the District sent a Notice of
9   Proposed Action and Refused Actions to Guardian denying
10  the request contained in her June 15, 2007 letter and
11  making an offer of placement for Extended School Year
12  (ESY) 2007.  The District offered placement in general
13  education (GE) at Excelsior Elementary School, extra
14  classroom support aide and SL for 30 minutes, one time
15  per week individual service.  The letter noted that the
16  District considered input from the IEP team members,
17  including discussions at the prior IEP meetings, and
18  reviews of Student's performance.

19      The June 20, 2007 letter from District to Guardian
20  also included an offer of placement from September 2007
21  to the annual review in February 5, 2008.  The District
22  offered Student specialized academic instruction for
23  1550 minutes per week in a mild-moderate special day
24  class (SDC) at Hill Elementary School, with the
25  following services: extra classroom aide support 300
26  minutes per day for the first four weeks, with a fade
27  plan reduction of 75 minutes per day each week for four
28  weeks; SL for 45 minutes one time per week individual

instruction, OT for 45 minutes one time per week
individual therapy in the OT clinic and 45 minutes one
time per week school-based individual therapy; IBI for
90 minutes per week after school in the IBI clinic and
20 minutes recess support, to ensure generalization of
social skills and functional communication skills
learned in the IBI clinic; APE for two 30-minute
collaboration sessions per month, and two 30-minute
consultation sessions per month, in collaboration and
consultation with the GE physical education teacher;
and counseling and guidance services 30 minutes per
week collaboration in the SDC by a school psychologist;
and audiology services for 30 minutes of consultation
four times per year in the SDC.

In a letter dated August 14, 2007, Guardian's
attorney rejected the District's offered placement and
indicated that Guardian would self-fund placement for
Student and seek reimbursement.  Guardian rejected the
offer of placement because it offered an SDC when
student had previously been in GE, did not include an
offer for proper transition from GE to SDC, did not
include an offer of aide support, and did not offer
goals and objectives for the proposed SDC.

After Guardian rejected the District's offered
placement, Student received instruction at RLC.
Student originally began receiving supplemental
services at RLC in November 2006, and began attending
RLC exclusively in June 2007.  Student attended RLC

exclusively for the summer program from June 1, 2007 to August 10, 2007, and again for the entire 2007-2008 school year.  These services were paid for by Guardian.

RLC provides individual and small group interaction in the areas of reading, writing, math instruction, and SL services.  RLC does not provide social skills training and does not have a behaviorist or school psychologist on staff.  Pursuant to its certification from the state of California, the RLC can only provide language based services.  Therefore, RLC can provide math word problems and vocabulary, but not arithmetic calculation.  RLC is a nonpublic agency (NPA), but is not a certified nonpublic school (NPS).

While at RLC, Student had made significant growth in his reading comprehension, IQ, and OT needs. Student also seemed less anxious and more confident. Student therefore benefitted from the services at RLC, and made progress on his goals.

Applicable Law

Under the IDEA, children with disabilities have the right to a FAPE, meaning special education and related services must be made available to the child at no charge to the parent or guardian.  20 U.S.C. § 1401.  A FAPE must meet state educational standards and conform to the child's IEP.

There are two parts to the legal analysis of whether a school district is in compliance with the IDEA.  First, the court examines whether the district

1  has complied with the procedures set forth in the IDEA.
2  Board of Educ. V. Rowley, 458 U.S. 176, 206-07 (1982).
3  Second, the court examines whether the IEP developed
4  through these procedures was reasonably calculated to
5  enable the child to receive education benefit.  Id.
6      The IDEA does not require school districts to
7  provide the services which maximize a student's
8  abilities.  Rather, school districts are required to
9  provide only a "basic floor of opportunity" consisting
10 of access to specialized instruction and related
11 services individually designed to provide educational
12 benefit.  Id.
13     Procedural errors in the IEP process do not require
14 an automatic finding of denial of a FAPE.  Procedural
15 violations constitute a FAPE denial only if the
16 procedural inadequacies impeded the child's right to a
17 FAPE, caused deprivation of educational benefits, or
18 significantly impeded the parents' opportunity to
19 participate in the IEP process.  20 U.S.C. §
20 1415(f)(3)(E).
21     When a school district does not perform exactly as
22 detailed in the IEP, the district does not violate the
23 IDEA unless it is shown to have materially failed to
24 implement the student's IEP.  Van Duyn v. Baker Sch.
25 Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007).
26     When a school district fails to provide a FAPE to a
27 student with a disability, the student is entitled to
28 relief that is appropriate in light of the purposes of

the IDEA.  School Committee of Burlington v. Dept. of Education, 471 U.S. 359, 369-71 (1985).  The IDEA permits both reimbursement and compensatory education as a form of equitable relief, after the court balances the behavior of the parties.  The award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied.

A school district is not required to pay for the cost of education, including special education and related services, for a pupil attending non-public school or private school if the district made a proper FAPE available to student, which was rejected by the parents.  However, a district may be required to reimburse a pupil's parents for the costs of a non-public or private school if the child previously received special education services from the district, and the district failed to make a FAPE available to the student.  20 U.S.C. § 1412(a)(10)(C).

To receive reimbursement or compensatory education, parents need to provide the exact placement or services required under the IDEA.  Parents must only provide a placement or services that address the student's needs and provide the student with educational benefit. Florence County Sch. Dist., Four v. Carter, 510 U.S. 7 (1993).

Administrative Proceedings

8

1      Guardian filed an IDEA due process hearing

2   complaint on August 20, 2007.  The matter came before

3   Administrative Law Judge (ALJ) Richard M. Clark on May

4   5 through May 8, 2008.  The issues presented were:

5      1.   Did the District commit substantive violations

6           of the Individuals with Disabilities Act (IDEA)

7           by:

8           (A) Failing to provide the following services

9               in accordance with the February 8, 2006

10              IEP: IBI services from February 8, 2006 to

11              June 21, 2007; social skills services from

12              September 2006 to June 20, 2007; RSP from

13              April 1, 2007 to June 20, 2007; and

14              appropriate one-to-one aide services from

15              February 8, 2006 to March 31, 2007;

16          (B) Failing to provide SL and audiology

17              services in accordance with the June 15,

18              2006 IEP?

19          (C)(1) Did the District deny Student a free and

20          appropriate education (FAPE) at the June 15,

21          2006 IEP by failing to create appropriate goals

22          and objectives to meet Student's unique needs

23          in SL, audiology, central auditory processing

24          disorder, and anxiety?  (2) Did the District

25          deny Student a FAPE by failing to create

26          appropriate goals to address Student's unique

27          need in the area of anxiety at the October 13,

28          2006 IEP?

(D) Failing to make an offer of placement and services for the period between February 22, 2007 and June 20, 2007;

(E) Failing to develop, adopt and implement any and/or appropriate goals and objectives from February 22, 2007 to the present;

(F) Failing to offer Sl goals and objectives, OT, or IBI services for the 2007 ESY;

(G) Failing to make an offer of placement and services on June 20, 2007, for the 2007-2008 school year that was appropriate to meet Student's unique educational needs by: (1) offering SDC instead of GE; (2) failing to offer any mainstream time in GE; (3) failing to offer a proper transition from GE to SDC; (4) failing to offer aide support when Student had previously had an aide; and (5) failing to offer goals and objectives for the proposed SDC, and offering inappropriate goals and objectives based upon a GE classroom teacher when Student was offered an SDC?

2. Did the District deny Student a FAPE by committing procedural violations of the IDEA by:

(A) At the October 13, 2006 IEP, failing to

10

respond to Student's parents' request for
SL and reading comprehension services by
an NPA;

(B)  Failing to consider Independent Education
Evaluations (IEE) and proposed goals
prepared by the RLC and Dr. Reicks, and
submitted to the District on February 5,
April 9, and June 13, 2007;

(C)  Failing to provide Student's parents with
accurate and complete copies of Student's
records, including copies of IEP
documents, from February 5 to April 9,
2007;

(D)  Failing to timely hold an IEP meeting in
spring 2007 and eventually giving Student
an offer of placement and services on June
20, 2007, without an IEP team meeting?

In bringing the administrative action, Guardian
requested reimbursement for services rendered by the
RLC, including travel costs to and from RLC.  Guardian
requested reimbursement for RLC expenses in the amount
of $41,693.75 out of pocket to send Student to RLC from
November 29, 2006 to the end of the 2007-2008 school
year, plus an additional $1291.50 for the May 2008
services for a total of $42,985.25.  Guardian also
incurred mileage from home to RLC totaling 7036 miles,
which represented 143 school days from September 2007
to April 2008, four trips per day at 49.2 miles per

11

day.  Guardian paid $3370 out of pocket for the cost of RLC during ESY 2007.  For the period of August 14, 2007 through December 2007, Guardian made four trips to RLC per day at 49.2 miles per day, for 68 school days, for total mileage of 3345.60.  Guardian also spent $3280 out of pocket for RLC for the period of November 2006 to June 19, 2007.  For the period of August 14, 2007, the day the 2007-2008 school year began, through December 2007, Guardian paid $15,389.58 to RLC.

With regard to the questions presented, the Administrative Law Judge found as follows:

> *Did the District commit substantive violations of the IDEA by failing to provide the following services in accordance with the February 8, 2006 IEP: IBI services from February 8, 2006 to June 21, 2007; social skills services from September 2006 to June 20, 2007; RSP services from April 1, 2007 to June 20, 2007; and appropriate one-to-one aide services from February 8, 2006 to March 31, 2007?*

- The District provided IBI services in accordance with the February 8, 2006 IEP.  To the extent that any services were missed, the District proposed a compensatory education plan for those services.  In any event, the missed services do not rise to the level of a material failure to implement the IEP.

- The District provided social skills services in accordance with the February 8, 2006 IEP.

There was no requirement that the services be
provided at any particular time of the day and
Student conceded that he received the services,
but not at the times Guardian believed he
should have received them.

• The District provided RSP services in
accordance with the February 8, 2006 IEP.  To
the extent that any services were missed, the
evidence established that they were later
provided to Student and there was no material
nonconformity with the IEP.

• The District provided one-to-one aide services
in accordance with the February 8, 2006 IEP.

*Did the District commit substantive violations of
the IDEA by failing to provide SL and audiology
services in accordance with the June 15, 2006 IEP?*

• The District did not provide SL services in
accordance with the June 15, 2006 IEP.  The
District missed SL services and offered 360
minutes of compensatory services at the October
13, 2006 IEP.  The missed SL services were a
material departure from the SL service required
by Student's IEP.

• The District provided audiology service in
accordance with the June 15, 2006 IEP, with the
exception of the September 2006 consultation.
The evidence showed that Ms. Hunthausen did not
conduct the consultation in September 2006,

13

even though she contacted the classroom teacher
and set up a time to meet.  The service was
conducted on October 3, 2006, and there was no
evidence that the error was a material
nonconformity with the IEP.

*Did the District deny Student a FAPE at the June
15, 2006 IEP by failing to create appropriate goals
and objectives to meet Student's unique needs in
SL, audiology, central auditory processing
disorder, and anxiety?*

- The District denied Student a FAPE by failing
  to create appropriate goals and objectives to
  meet Student's unique needs in SL, audiology,
  and central processing disorder at the June 15,
  2006 IEP meeting.

- The District did not deny Student a FAPE by
  failing to create an appropriate goal to
  address anxiety at the June 15, 2006 IEP
  meeting.  There was no evidence that Student
  had a unique need in the area of anxiety at
  that meeting.

*Did the District deny Student a FAPE by failing to
create appropriate goals to address Student's
unique need in the area of anxiety at the October
13, 2006 IEP?*

- The District denied Student a FAPE by failing
  to create an appropriate goal to address
  Student's unique need in the area of anxiety at

1    the October 13, 2006 IEP meeting.

2    *Did the District deny Student a FAPE by failing to*

3    *make an offer of placement and services for the*

4    *period between February 22, 2007 and June 20, 2007?*

5    •    The District did not deny Student a FAPE by

6         failing to make an offer of placement from

7         February 22, 2007 to June 20, 2007.

8    *Did the District deny Student a FAPE by failing to*

9    *develop, adopt and implement any and/or appropriate*

10   *goals and objectives frm February 22, 2007 to the*

11   *present?*

12   •    The District did not deny Student a FAPE by

13        failing to develop appropriate goals for

14        Student from February 22, 2007 to the present.

15        The evidence established that the goals were

16        proposed and were being drafted, but the

17        District never followed through with the

18        revision of the goals as stated in the IEP

19        documents.  However, there was no loss of

20        education al benefit to Student while the goals

21        were being finalized.  He was regularly

22        attending school and making educational

23        progress.

24   *Did the District deny Student a FAPE by failing to*

25   *offer SL goals and objectives, OT, or IBI services*

26   *of the 2007 ESY?*

27   •    The District denied Student a FAPE when it made

28        a written offer on June 20, 2007, for ESY 2007.

15

1          The offer was not appropriate because it did

2          not address all areas of Student need,

3          specifically in OT, which was necessary to

4          prevent regression.

5    *Did the District deny Student a FAPE by failing to*

6    *make an offer of placement and services on June 20,*

7    *2007, for the 2007-2008 school year that was*

8    *appropriate to meet Student's unique education*

9    *needs by: (1) offering an SDC instead of GE; (2)*

10   *failing to offer any mainstream time in GE; (3)*

11   *failing to offer a proper transition from GE to*

12   *SDC; (4) failing to offer aide support when Student*

13   *had previously had an aide; and (5) failing to*

14   *offer goals and objectives for the proposed SDC,*

15   *and offering inappropriate goals and objectives*

16   *based upon GE classroom teacher when Student was*

17   *offered an SD?*

18   •   The District did not deny Student a FAPE in its

19       written offer on June 20, 2007, by offering

20       Student an SDC instead of GE, not including an

21       offer of a one-to-one aide, and not including a

22       transition from the GE to an SDC.  The District

23       also did not deny Student a FAPE by not

24       developing goals based upon the SDC placement.

25       The offer should have included proposed goals

26       and objectives to be implemented, even though

27       there was no requirement that goals be specific

28       to one classroom.  Goals are designed to

address need regardless of where they are to be implemented.  The offer did not indicate what goals would be implemented, but it is reasonable to expect that the IEP team would have met again to finalize goals for the school year.  The offer addressed Student's unique needs and was designed to provide him educational benefit.

- The District denied student a FAPE in the June 20, 2007 written offer of placement by failing to include any time in the GE in the offer and include an explanation about why Student needed to be in an SDC when he had previously been in the GE full time.  The District was proposing to move Student to a more restrictive setting and therefore the offer to Guardian should have been more detailed.

*Did the District deny Student a FAPE at the October 13, 2006 IEP by failing to respond to Student's parents' request for SL and reading comprehension services by an NPA?*

- The District did not deny Student a FAPE by failing to respond to Guardian's request for NPA services.  The evidence did not establish any loss of education benefit or impede Student's right to a FAPE.  The evidence also showed that Guardian was actively and meaningfully participating in the IEP process.

17

*Did the District deny Student a FAPE by failing to*
*consider IEEs and proposed goals prepared by the*
*RLC and Dr. Reicks and submitted to the District on*
*February 5, April9, and June 13, 2007?*

- The IEP team discussed reports from RLC at the
  February 9 meeting and RLC staff members
  provided a review of their assessments and the
  team asked questions.  The goals proposed by
  the RLC presented at the April 9, 2007 IEP
  meeting were not discussed at any IEP meeting.
  However, Mr. Adams considered the goals prior
  to making an offer of placement to Student on
  June 20, 2007.  Further, the goals were
  considered by Student's service providers as
  well.  There was no FAPE denial based upon the
  District's alleged failure to consider the
  proposed goals from the RLC.  Further, Dr.
  Reicks' report dated March 27, 2007, was not
  considered at any IEP meeting, but the District
  established that the report in the form of a
  letter from Dr. Reicks was not appropriate and
  therefore did not need to be considered by the
  District.  However, the evidence established
  that Mr. Adams considered Dr. Reicks' report
  prior to making the June 20, 2007 written offer
  of placement and there was no FAPE denial
  related to consideration of Dr. Reicks' report.

*Did the District deny Student a FAPE by failing to*

*provide Student's parents with accurate and*
*complete copies of Student's records, including*
*copies of IEP documents, from February 5 to April*
*9, 2007?*

- The District did not deny Student a FAPE by
  failing to provide accurate and complete
  student records.  The evidence was insufficient
  to establish any denial of FAPE related to
  school records.  The evidence showed that
  Guardian was provided records and that draft
  IEP notes were submitted to CDE with the
  incorrect date, but Student otherwise had those
  records.  There was no FAPE denial.

*Did the District deny Student a FAPE by failing to*
*timely hold an IEP meeting in Spring 2007 and*
*eventually giving Student an offer of placement and*
*services on June 20, 2007, without an IEP team*
*meeting?*

- The District did not deny Student a FAPE by
  failing to timely hold an IEP meeting in the
  spring of 2007 and by making a written offer to
  Student without first holding an IEP meeting.
  The District was obligated to make Student a
  specific, written offer for services and it did
  so.

In all, the Administrative Law Judge found that the
District failed to provide Student a FAPE by:

- Failing to provide SL services in accord with

the June 15, 2006 IEP;

- Failing to develop and implement a goal to address his unique need in the area of auditory processing after June 15, 2006;

- Failing to develop a goal and address Student's need in the area of anxiety after October 13, 2006;

- Failing to make Student an appropriate offer for ESY 2007 by failing to include OT services; and

- Failing to include the amount of time Student would spend in GE in the offer and include an explanation why an SDC was more appropriate in the offer of placement in June 2007.

The Administrative Law Judge found that Guardian is entitled to reimbursement for the period November 2006 through ESY 2007.  The ALJ found RLC to be appropriate for summer placement, and was designed to provide educational benefit during the summer months when school is not in session.  Therefore, the Administrative Law Judge found that Student is entitled to reimbursement for the period of November 2006 through ESY 2007, in the amount of $7190 plus mileage.

However, the ALJ found RLC was not an appropriate full-time placement for Student because it did not meet all of Student's educational needs, including needs for peer interaction and social skills development that cannot be addressed at RLC.  Therefore, the ALJ

20

determined that full reimbursement for RLC expenses during the full-time school year was not appropriate. However, because of the failure of the District to include GE time in the offer of placement for the 2007-2008 school year and otherwise include an explanation about why an SDC was appropriate when Student had previously been in the GE full time, the ALJ awarded Guardian an additional reimbursement for one semester of the 2007-2008 school year while at RLC, in the amount of $15,389.58, plus mileage.  In all, the ALJ awarded Guardian $22,579.58 for RLC services and $1689.53 for mileage, for a total award of $24,269.11.

Standard of Review

A district court reviews the decision of the hearing officer in an administrative proceeding under a modified de novo standard.  Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471-73 (9th Cir. 1993).  The Court must give due weight to the administrative proceedings, particularly where the administrative decision was "careful, impartial and sensitive to the complexities presented."  Id. at 1476; see also Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).  However, the district court is free to accept or reject the findings of the hearing officer as a whole or in part.  County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).

Conclusions of Law

The Court finds that the proceedings and decision of the Administrative Law Judge in this matter were thorough, impartial, and sensitive to the complex issues presented in this case.  The decision of the ALJ gives an exhaustive background and proceeds through each issue with an analysis of the evidence presented on each side, an analysis of its credibility, and a well-reasoned conclusion on each of the challenged issues.  The Court notes that the ALJ was present for the testimony of each of the witnesses, and therefore is a better judge of credibility than this Court. Therefore, the Court will give substantial weight to the factual findings of the Administrative Law Judge.

The Administrative Law Judge found some violations of FAPE, and awarded Guardian partial reimbursement of out of pocket payments made to RLC.  The awarded reimbursement corresponds to payments made during the 2006-2007 school year, including ESY 2007, for the FAPE violations during that time.  The ALJ permitted this reimbursement because RLC was an appropriate placement for Student during this time.

The ALJ noted that placement at RLC was not appropriate after this time, which corresponded to the 2007-2008 school year.  The ALJ determined that because RLC is a nonpublic agency, rather than a nonpublic school, it was not equipped to provide all the services Student required.  Therefore, the ALJ seemed initially inclined to deny reimbursement for this period.

However, because the District did not properly document why a placement in SDC was more appropriate than a placement in GE, which constituted a denial of FAPE, the ALJ awarded reimbursement for half of the 2007-2008 school year.  This amount was awarded even though the ALJ found that the offer of placement by the District for the 2007-2008 school year was appropriate and did not constitute a FAPE violation.

Guardian challenges the amount awarded because it constitutes approximately half of the amount actually expended for services at RLC.  Guardian notes that Student made progress and received educational benefits at RLC, despite the fact that RLC is a nonpublic agency, rather than a nonpublic school.

In <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7 (1993), the Supreme Court considered the question of whether private school placement by a parent after a FAPE denial by a school district was proper under the IDEA.  The Court determined that such placement is proper, even when "the parents choose a private school that is not approved by the State or that does not comply with all the terms of the IDEA." <u>Id.</u> at 11.  The Court concluded that placement in a private school is proper "if the education provided by the private school is reasonably calculated to enable the child to receive educational benefits." <u>Id.</u>

Here, the ALJ determined that Student received educational benefits during his enrollment at RLC.

Student's IQ increased, and he made progress on his
reading comprehension and OT needs.   Student also
showed improvement in his behavior and anxiety-related
problems.   In addition, Student had been attending RLC
for supplemental services at the time of his placement,
and had made progress in his educational and social
goals.   Therefore, this Court finds that the education
provided by RLC was reasonably calculated to enable
Student to receive educational benefits.

      RLC however, is not a properly certified nonpublic
school.   Rather, RLC is a nonpublic agency which is
designed to provide supplemental services in addition
to enrollment in a full-time school.   RLC is not
equipped to meet all of Student's needs.   On the basis
of this distinction between a nonpublic school and
nonpublic agency, the ALJ determined that placement at
RLC was not proper.

      It is unclear whether this distinction between a
nonpublic school and a nonpublic agency is material for
a determination of reimbursement under the IDEA.   This
Court disagrees with the importance of this distinction
made by the ALJ.   While it is true that <u>Florence County</u>
<u>Sch. Dist. Four v. Carter</u> and the other cases which
consider this issue consider placement within nonpublic
schools, the cases have found that educational benefit
is the proper standard for placement, not State
requirements or the strict guidelines of the IDEA.   The
Court in <u>Carter</u>, for example, noted that "[n]or do we

24

believe that reimbursement is necessarily barred by a private school's failure to meet state education standards." Although reference is made to a private "school," the idea that proper placement is determined by educational benefit to the student rather than by adherence to strict standards is clear. Likewise, in Carter v. Florence County School District, 950 F.2d 156 (4th Cir. 1991), the court noted that several courts "have allowed reimbursement despite the absence of state approval of the private school chosen by the parents." Id. at 163. Rather, "when a public school system has defaulted on its obligations under the Act, a private school placement is proper under the Act if the education provided by the private school is reasonably calculated to enable the child to receive educational benefits." Id. Therefore, the yardstick by which to determine whether reimbursement is proper is whether the placement affords the student educational benefits.

Here, it seems clear that student received educational benefits from the services he obtained at RLC. While the District argues that this distinction between a nonpublic school and nonpublic agency should prevent reimbursement, the Court is not referred to authority for this proposition, nor are reasons given for such a distinction. Therefore, the Court is not persuaded that the distinction between a nonpublic school and a nonpublic agency is material to

25

reimbursement in light of the facts of this case and
the purposes of the IDEA.  Accordingly this Court finds
that the Guardian should be reimbursed for the full
amount claimed for services provided by RLC to Student.

**IT IS SO ORDERED.**

DATED: December 10, 2009

/ s /

_____

**HONORABLE RONALD S.W. LEW**

Senior, U.S. District Court Judge